

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-2007

# USA v. Jimenez

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3114

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Jimenez" (2007). *2007 Decisions.* Paper 1759.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1759

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 05-3114

———————

UNITED STATES OF AMERICA

v.

JOSE JIMENEZ
Appellant

———————

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Action No. 04-cr-00063-1)
District Judge:  Hon. Eduardo C. Robreno

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 17, 2007

BEFORE:  McKEE, AMBRO and STAPLETON,
Circuit Judges

(Opinion Filed:  January 23, 2007)

———————

STAPLETON, Circuit Judge:

Appellant, Jose Jimenez, pled guilty to distributing approximately 124 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). He was sentenced to a mandatory minimum sentence of 120 months of imprisonment and five years of supervised release.

The following summary of the information of record is accurate:

> On December 2, 2003, at approximately 10:30 a.m., DEA agents met with Irizarry [a cooperating informant] at a pre-arranged location in Philadelphia, and instructed him to make a telephone call to Jimenez regarding the purchase of a quarter pound of crack cocaine for $3,100 United States currency. During the conversation, Irizarry asked Jimenez if he could get him a quarter pound of crack cocaine in 45 minutes. Jimenez stated that he would find it and cook it for Irizarry. At approximately 10:40 a.m., the DEA agents searched Irizarry, found nothing, and provided him with recording devices and $3,100 to purchase the quarter pound of crack cocaine.
>
> * * *
>
> At approximately 12:13 p.m., an officer observed Jimenez arrive and park on the west side of Second Street, south of Master Street. Irizarry exited the undercover vehicle, and entered Jimenez' car, which contained Jimenez and an unknown male. Several moments later, Irizarry exited Jimenez' car, entered the undercover vehicle, and stated that Jimenez did not have the crack cocaine with him, but had to go "cook it." Jimenez told Irizarry that he would be back in

2

twenty minutes.

\* \* \*

> At approximately 1:50 p.m., officers observed Irizarry park on the west side of Second Street, south of Master Street, with two unknown males as his passengers. The officers observed Irizarry exit the undercover vehicle, and walk over to the passenger side of Jimenez' car. Jimenez exited the driver's side and met with Irizarry. At approximately 1:53 p.m., the officers observed Jimenez enter his car and Irizarry enter the undercover vehicle. The officers took custody of approximately 124.1 net grams of crack cocaine from Irizarry, which had been purchased from Jimenez for $3,100.

Br. Appellee at 5-7 (record citations omitted).

Jimenez insists that "he was the victim of sentencing entrapment." Br. Appellant at 4. He represents that he initially brought 120 grams of powder cocaine for sale to Irizarry, that he did not know how to cook to powder cocaine into crack, and that he would not have gotten someone else to cook it had not Irizarry refused to be satisfied with powder cocaine. We accept these representations for purposes of our review.

"Sentencing entrapment occurs when an appellant, although pre-disposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment." *United States v. Sumler*, 294 F.3d 579 (3d Cir. 2002). The District Court was clearly entitled to conclude that it did not occur here.

Entrapment requires that the government engage in conduct that can reasonably be expected to overcome, and does overcome, the will of someone not predisposed to commit a particular offense. Here, the government did nothing more than provide

Jimenez with the opportunity to sell crack cocaine, an opportunity that he immediately seized in the first telephone conversation. He was thus willing from the start to commit the crime of crack distribution, and he produced it for sale on the same day without any significant delay. Here, Jimenez was predisposed to distribute crack, and his will did not need to be overcome. *United States v. Walls*, 70 F.3d 1323, 1329 (D.C. Cir. 1995).

Jimenez also argues that the sentencing disparity between crack and powdered cocaine found in 21 U.S.C. § 841(b)(1)(A) and (B) violates his right to substantive due process. The primary foundation of Jimenez' argument has been expressly rejected by the Supreme Court, however:

> Petitioners argue that the due process of law guaranteed them by the Fifth Amendment is violated by determining the lengths of their sentences in accordance with the weight of the LSD "carrier," a factor which they insist is arbitrary. They argue preliminarily that the right to be free from deprivations of liberty as a result of arbitrary sentences is fundamental, and therefore the statutory provision at issue may be upheld only if the Government has a compelling interest in the classification in question. But we have never subjected the criminal process to this sort of truncated analysis, and we decline to do so now. Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial in accordance with the relevant constitutional guarantees. But a person who *has* been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. In this context, . . . an argument based on equal protection essentially duplicates an argument based on due process.

4

*Chapman v. United States*, 500 U.S. 453, 464-65 (1990) (citations omitted).

This Court, as well as every other court that has considered the issue, has concluded that there is a rational basis for (*i.e.*, no arbitrariness in) the disparity Jimenez attacks. *See United States v. Frazier*, 981 F.2d 92, 96 (3d Cir. 1992) (footnote omitted):

> There are reasonable grounds for imposing a greater punishment for offenses involving a particular weight of cocaine base than for comparable offenses involving the same weight of cocaine. These grounds include differences in the purity of the drugs, the dose size, the method of use, the effect on the user, and the collateral social effects of the traffic in the drug. Whether the ratio best reflecting these genuine differences should be calibrated at 5-to-1, 20-to-1, or 100-to-1 is a discretionary legislative judgment for Congress and the Sentencing Commission to make.

*See also United States v. Lawrence*, 951 F.2d 751, 755 (7th Cir. 1991); *United States v. Pickett*, 941 F.2d 411, 418 (6th Cir. 1991); *United States v. Thomas*, 932 F.2d 1085 (5th Cir. 1991); *United States v. Turner*, 928 F.2d 956, 960 (10th Cir. 1991); *United States v. Buckner*, 894 F.2d 975, 978, 980 (8th Cir. 1990); *United States v. Cyrus*, 890 F.2d 1245, 1248 (D.C. Cir. 1989); *United States v. Solomon*, 848 F.2d 156, 157 (11th Cir. 1988); *United States v. Collado-Gomez*, 834 F.2d 280, 281 (2d Cir. 1987).

The judgment of the District Court will be affirmed.